Asociación de Embotelladores de Puerto Rico, etc., Petitioners, *v.* Minimum Wage Board of Puerto Rico, Respondent.

No. O-67-113.     Decided June 19, 1968.

*Pieras & Martín* for petitioners. *Ismael Soldevila* and *Rafael Cabello Ortiz* for respondent.

Second Division composed of Mr. Justice Hernández Matos, as Chief Judge of Division, Mr. Justice Santana Becerra, Mr. Justice Dávila, and Mr. Justice Torres Rigual.

PER CURIAM: The Asociación de Embotelladores de Puerto Rico and its affiliated companies challenge Mandatory Decree No. 33 (Fourth Revision 1966) applicable to the Food and Related Products Industry. They sustain that with respect to the determinations of Wages applicable to the Carbonated Waters and Soft Drinks Division:

"A.—The Minimum Wage Committee and the Minimum Wage Board of Puerto Rico acted without authority and beyond their powers, and the decree was obtained through fraud in changing the agreement reached in the penultimate meeting of the Minimum Wage Committee with respect to the minimum wage under

Article II, Section 11 of the same with respect to the Carbonated Waters and Soft Drinks Industry, and in adding Classification I under Section 11, and which fixed a wage greater than the one agreed upon for businesses with a volume of an annual gross income of $1,000,000.00 or more without holding said last meeting of the Committee for such a purpose, and without giving the members of the Committee the opportunity to prepare themselves in order to oppose said increase which was unexpectedly made in the wages. That by said conduct the petitioners have been deprived of the complete and fair operation of the tripartite process (Worker-Employer-Public) provided by law to fix minimum wages."

"B and C.—B. The Minimum Wage Committee and the Minimum Wage Board of Puerto Rico acted without authority and beyond their powers in classifying wages according to the volume of the gross income of the industry with respect to Article II, Section 11—Carbonated Waters and Soft Drinks— of Mandatory Decree No. 33, Fourth Revision, inasmuch as said differential in wages, within the same industry and without making any reference to regions, grants competitive advantage to those industries with a gross income of less than $1,000,000.00 in violation of the provisions and spirit of the law."

A mere recital of the events which occurred in the Minimum Wage Committee definitively contradicts the charge of fraud. There is not the slightest justification for said charge. It can only be accounted for by the provisions of § 29 of the Minimum Wage Act which limit the power of this Court to annul and remand a wage order if the Board acted without authority or ultra vires or because the order was procured through fraud. The following explains what occurred in the committee.

At the meeting held on September 27, 1966 (Minutes No. 8), the workers' representation proposed that the Classification "Coffee Roasting" be divided into two subclassifications between those enterprises with an annual gross income of $500,000 or more and those with an annual gross income of less than $500,000. The employers' representation sub-

mitted an amendment to that proposition to the effect of making the classification by volume of annual gross income applicable to all the enterprises, including the Carbonated Waters and Soft Drinks Division. Both proposals were defeated. It was unanimously agreed that the same classification which existed in the Decree then in force would be maintained.

At the meeting held on October 4, 1966 (Minutes No. 10) in considering the classification "Carbonated Waters and Soft Drinks," the employers proposed that two subclassifications be created, one for businesses with annual gross income of $1,000,000, or more and another for businesses with income of less than $1,000,000. This proposal was defeated. The workers' representation then proposed that the classification be made on the basis of annual gross income of more than $500,000 and less than $500,000. It was defeated also. After considering different wage proposals, the Committee approved the following proposal of the party representing the employers' interest: Chauffeurs $1.15, Office Clerks $1.25, Other Employees $0.90. The employers' representation and two representatives of the public interest voted in favor of these wages, one of the persons of the public interest abstained from voting and the workers' representation voted against them.

At the meeting of October 6 (Minutes No. 11), the foregoing agreement was ratified.

At the meeting held on October 24, 1966 (Minutes No. 12), all the members of the Committee being present, the workers' representation proposed that the classification corresponding to Carbonated Waters and Soft Drinks be reconsidered. This was approved, and the workers' representation proposed that this classification be divided into enterprises with annual gross income of more than $750,000 and with less than $750,000. The representation of the public interest amended the proposition in the sense that the classification be made

on the basis of an annual gross income of $1,000,000. The amendment did not prosper.

The members of the employers' interest requested a recess to hold a caucus. When the Committee met again, the workers' representation then proposed that the classification be made on the basis of an income greater or smaller than $1,000,000. It was approved by the public interest's representation and two of the workers' representation. Two members of the employers' representation voted against it, and one of the workers' representation and another of the employers' representation abstained from voting.

The workers' representation proposed the following wages: Annual Gross Income of more than $1,000,000, $1.25 Minimum Gross Income:

| | |
|---|---|
| Chauffeurs | 1.15 |
| Office Clerks | 1.25 |
| Other Employees | .90 |

It appears from the Minutes that the Committee agreed to adjourn till October 26 "to analyze the impact that these recommendations would have on the businesses under the classification."

In the Minutes No. 13 of the meeting held on October 26, 1966, all the members were present, and it was entered that the Committee discussed the rules which would govern the computation of the annual gross income in the Classification of Carbonated Waters and Soft Drinks, and the definitions of the concepts. Then the rules and definitions were approved unanimously, and it was agreed that they should form part of the proposed mandatory decree which the Committee would submit to the Minimum Wage Board.

The Committee then considered the wage proposal presented by the workers' representation at the meeting held on October 24, and it was approved with the employers' representation voting against it.

It appears from the foregoing that the employers' representation was the first one to make the proposal of classifying the industry on the basis of annual gross income, that after the classifications were adopted at the meeting of October 24, the meeting was adjourned to consider at the next meeting the impact which the wages proposed by the workers' representation would have on the industry, and that at the following meeting the rules for determining the computation of the annual gross income, and the definitions of concepts as to the classification were unanimously approved. The employers' representation was present at all these meetings. As we stated before, the recital of these facts establishes the absolute lack of grounds for the charge of fraud. Also these facts, as set forth, are a clear demonstration of the tripartite process in operation.

Petitioners sustain that the law does not grant authority to establish the classification on the basis of annual gross income "inasmuch as said differential in wages, within the same industry and without any reference to regions, grants competitive advantage to those industries with a gross annual income of less than $1,000,000, in violation of the provisions and spirit of the law."

Section 16[1] of the Minimum Wage Act provides that "the committees may also recommend different minimum wages for various districts or regions or for various categories or classes of the same industry where, in its judgment, such differentiation may be advisable due to the conditions existing between said districts, regions, or categories of the same industry provided such action does not allow competing advantages to other districts, regions or categories of the same industry."

We thus see that the law authorizes the classification made by the Committee, if it does not grant competitive

---

[1] 29 L.P.R.A. § 245o.

advantages. Let us see what the situation is as to this. The report of the Committee justifies the classification and to that effect it stated:

"I. *Enterprises with a Volume of Annual Gross Income of $1,000,000 or more*

In this subclassification of the industry, five enterprises operate with a total of 912 workers. These had an income in the year 1965 of $19,834,616. The payroll of the employees covered by the minimum wage legislation amounted to $3,564,288 and the net profit was $1,531,182 which represented 7.7 percent of the income.

The minimum wage per hour in force for the classification is $1.00 for the chauffeurs, $1.15 for the office clerks, and 80 cents for the other employees.

The median (in cents) was 159.0 for chauffeurs, 149.8 for office clerks, and 124.0 for the other employees.

The committee recommends the following minimum wages per hour for the subclassification:

| Occupation | Minimum Wage Recommended |
|---|---|
| Chauffeurs | $1.25 |
| Office Clerks | 1.25 |
| Other Employees | 1.25 |

The recommended minimum wage would increase the payroll of the subclassification by 6.2 percent. This increase in absolute terms is of $220,968. The net profit would be reduced from $1,531,182 to $1,310,214 that is, 6.6 percent. Forty-two point five (42.5) percent of the 912 employees would receive an increase in their wages.

II. *Enterprises with a Volume of Annual Gross Income of Less Than $1,000,000*

In this subclassification 13 enterprises operate employing 369 workers. They had an income in the year 1965 of $5,033,655. The payroll of the employees covered by the minimum wage legislation amounted to $1,164,651 and the net profit was $137,856, and represented 2.7 percent of the income.

The median (in cents) was 112.0 for chauffeurs, 136.4 for the office clerks, and 92.0 for the other employees.

The Committee recommends the following minimum wage for the workers of the subclassification:

| Occupation | Minimum Wage Recommended |
|---|---|
| Chauffeurs | $1.15 |
| Office Clerks | 1.25 |
| Other Employees | 0.90 |

If this minimum wage were approved, it would cause an increase of 5.1 percent in the payroll of the subclassification. This increase in absolute terms would be $59,364. The net profit would be reduced from $137,856 to $78,492, that is, from 2.7 to 1.6 percent of the income.

In recommending wages of the two previous subclassifications, the Committee considered that said division is justified because the five enterprises with a volume of annual gross income of $1,000,000 or more are paying better wages to their employees, they have a better system of distribution of the product, and are in a better financial condition, and therefore have a greater capacity of payment than the enterprises with a volume of annual gross income of less than $1,000,000."

Thus we see that the profit of the industries with income of more than $1,000,000 was 7.7 percent of the income, and the profit of the enterprises with less than $1,000,000 of annual gross income was 2.7 percent. In the latter, the wages approved would reduce the profit to 1.6 percent of the income.

It is interesting to point out that the position of the employers' representation in the Committee was not that the approved classification granted a competitive advantage to the enterprises with annual gross income of less than $1,000,000. On the contrary, the contention was that the wages approved for that category would ruin seven enterprises. Let us see what they set forth before the Committee:

"The Committee affirms that if this minimum wage is approved, there would be an increase of 5.1 percent in the payroll of the subclassification. The Committee continues saying that this increase in absolute terms would be $59,364, this would re-

duce the net profit of the 13 enterprises which operate in the subclassification from $137,856 to $78,496, that is, that it would reduce the profit of these businesses from 2.7 to 1.6 percent of the income.

"The numbers which appear in Table I permit us to easily understand how different, in reality, is the effect which would be produced by the increase recommended by the Committee, on the financial condition of the enterprises. Said numbers reveal that the recommended increase, in addition to aggravating considerably the financial condition of the 3 businesses which are sustaining losses, would make the enterprises marked numbers 8 and 13 incur losses, which would convert their narrow profits of 0.3 percent of the income, into a loss of 0.9 and 0.4 percent, respectively.

"In addition to this, the information given in Table I permits us to observe that the enterprises marked numbers 7 and 9 will be below the greatly reduced profit of 1.6 percent on the income alleged by the Committee.

"Therefore, the increase recommended for the present case would practically ruin 7 of the 13 enterprises which operate in this subclassification; and hence, in addition to being contrary to the government's policy of industrial promotion and to being completely unfair and arbitrary, it would precipitate the closing of the businesses affected, and would cause the unemployment of many workers."

But there is yet more. There are five enterprises in the category of businesses with more than $1,000,000 of annual gross income. Two of these pay, by agreement, wages above those fixed in the Decree. The position of the employers' representation before the Committee was in the sense that for the other three enterprises "the increase recommended, therefore, would jeopardize considerably the financial situation of the businesses affected, and it would also place them in a position of competitive disadvantage against the other businesses with a greater volume of annual gross income."

It is inevitable to conclude from the foregoing that the Committee was correct in establishing the classifications which it established for the industry of Carbonated Waters

and Soft Drinks, and that the approved classification does not grant any competitive advantage to the enterprises with an income of less than $1,000,000.

None of the errors assigned were committed.